IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



FEBRUARY 14, 2006




NO. 07-05-0384-CV






IN RE STACY K. BOONE, P.A. AND


CARDIOLOGISTS OF LUBBOCK, P.A.


 _______________________________


 


NO. 07-05-0425-CV






IN RE COVENANT MEDICAL GROUP, P.A.


_____________________________________




Before REAVIS and CAMPBELL, JJ. and BOYD, S.J. (1)

OPINION


 Relators Stacy K. Boone, P.A. ("Boone") and Cardiologists of Lubbock, P.A.
("COL"), defendants in a medical malpractice case, seek a writ of mandamus directing
respondent the Honorable Sam Medina, judge of the 237th District Court of Lubbock
County, to withdraw his order denying relators' motion to dismiss and further directing
respondent to grant relators' motion to dismiss, thereby dismissing the underlying case with
prejudice with an award of monetary sanctions. (2) In a separate original proceeding, relator
Covenant Medical Group, P.A. ("CMG") (3) seeks a writ of mandamus directing respondent
to grant CMG's motions to dismiss, thereby dismissing the underlying cause with prejudice
with an award of monetary sanctions. (4) Both of these original proceedings arise from the
same underlying case and the same expert report filed pursuant to former article 4590i, the
Medical Liability and Insurance Improvement Act. We deny both petitions.
Factual Background


 On June 18, 2003, Nancy Stovall underwent surgery for a right inguinal hernia
performed by Elbert A. Thames, Jr., M.D., an employee of CMG, at Covenant Medical
Center in Lubbock, Texas. Stovall's health history included an aortic valve replacement
with a mechanical prosthesis in 1990, a coronary stent placement in 1999, and a
laparascopic cholecystectomy in 2002. Following the uneventful hernia repair surgery,
Stovall experienced chest pain and a cardiologist, Howard P. Hurd II, M.D., was consulted. 
Boone is Hurd's physician assistant and also saw Stovall during her hospitalization. COL
employs both Boone and Hurd. Stovall remained in the hospital in order to regulate her
anti-coagulation medication which included Heparin and Coumadin. On June 21, Stovall
fell on her way to the bathroom. There was a drop in her blood count and blood pressure
and she was moved to the ICU under the care of Mark E. Pessa, M.D., an employee of
CMG. The next day, Stovall suffered from liver dysfunction and renal failure secondary to
hypotension. She later experienced multi-system failure and died on June 24, 2003.

Background of Underlying Lawsuit


 On August 26, 2003, pursuant to article 4590i, the real parties in interest filed suit
against the healthcare providers that participated in her course of treatment that began on
June 18, 2003. In January 2004, plaintiffs provided their section 13.01(d) medical expert
report, authored by Howard S. Bush, M.D., a cardiologist. Among other aspects of her
treatment, the 13-page Bush report criticizes Stovall's post-operative anti-coagulation
therapy, which was administered by Dr. Hurd, Boone, COL, CMG, and others. (5) 

Boone and COL's Motions to Dismiss


 In February 2004, Boone and COL filed their objections to the sufficiency of the
Bush report and a motion to dismiss. In July 2004, Boone and COL renewed their
objections to the Bush report and filed additional motions to dismiss. The trial court denied
Boone and COL's motions to dismiss in August 2005, and Boone and COL seek
mandamus to reverse the trial court's denial of the motions.

CMG's Motion to Dismiss


 As noted, Drs. Thames and Pessa are employees of CMG. Thames, Pessa and
CMG filed separate motions to dismiss based on the inadequacy of Dr. Bush's report under
article 4590i. In July 2005, the plaintiffs non-suited Dr. Pessa. In August 2005, the trial
court denied the motions to dismiss filed by Thames and CMG. CMG suggests, and the
real parties in interest do not dispute, that Thames also has been dismissed from the
underlying lawsuit. (6) CMG also seeks mandamus for the trial court's denial of its motion
to dismiss.

Requirements of 4590i Expert Report 


 This court has found mandamus relief available to correct a trial court's erroneous
failure to dismiss a claim brought under article 4590i that is not supported by an adequate
section 13.01 expert report. In re Windisch, 138 S.W.3d 507, 514 (Tex.App.-Amarillo
2004, orig. proceeding) (qualifications of expert not shown in report); In re Northwest Texas
Healthcare System, Inc., 2005 WL 991365, *3 (Tex.App.-Amarillo April 27, 2005, orig.
proceeding [mand. pending]) (reports inadequate because they either omit or do no more
than state the experts' mere conclusions about the elements required in an expert report). 
Mandamus issues only to correct a clear abuse of discretion or the violation of a duty
imposed by law when there is no other adequate remedy by law. Walker v. Packer, 827
S.W.2d 833, 839 (Tex. 1992). 

 An expert report under section 13.01 does not need to marshal all of plaintiff's proof,
but the report must be written by an expert and provide a fair summary of that expert's
opinions regarding (1) the applicable standard of care, (2) the breach of that standard, and
(3) the causal relationship between the breach and the injury. TEX. REV. CIV. STAT. art.
4590i, §13.01(r)(6); Bowie Memorial Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002);
Chisholm v. Maron, 63 S.W.3d 903, 906 (Tex.App.-Amarillo 2001, no pet.). To constitute
the required "good faith effort," the report must provide enough information to fulfill two
purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called
into question, and (2) it must provide a basis for the trial court to conclude that the claims
have merit. American Transitional Care Ctrs. of Texas, Inc. v. Palacios, 46 S.W.3d 873,
879 (Tex. 2001). With regard to the causation element, the expert must explain the basis
of his statements to link his conclusions to the facts. Earle v. Ratliff, 998 S.W.2d 882, 890
(Tex. 1999). The report must, as to each defendant, provide a fair summary of the expert's
opinions concerning the applicable standard of care, the manner in which the care failed
to meet that standard, and the causal relationship between that failure and the claimed
injury. Palacios, 46 S.W.3d at 878.





Petition of Boone and COL


 In support of their contention that mandamus should issue to correct the trial court's
order denying their article 4590i, §13.01(e) motion, Boone and COL argue that Bush's
report (1) fails to state the standards of care applicable to a professional association and
a physician's assistant and fails to demonstrate that Bush is qualified to address the
standards of care applicable to those defendants; (2) fails to show a breach in the standard
of care by Boone and COL; and (3) fails to show a causal link between the care rendered
by Boone and COL and Stovall's injuries and death. 

Qualifications of Dr. Bush


 We first address Dr. Bush's qualifications to testify as to the standard of care
applicable to Boone and COL. The determination of his qualifications to provide an expert
report must be made on the basis of the contents of the report and his curriculum vitae.
Bowie, 79 S.W.3d at 52; Windisch, 138 S.W.3d at 511. Those documents reflect that
Bush has been licensed to practice medicine in Texas since 1983 and in Florida since
1990. He is board certified in Cardiovascular Diseases, in Interventional Cardiology, and
in Internal Medicine. At the time of the report, Bush was engaged in active practice as the
chairman of the Department of Cardiology at Cleveland Clinic Florida. His report states
that he "devotes the majority of [his] time to operative and post operative care, and [he]
regularly see patients under the circumstances described in this report." It further states
he averages seeing over 75 patients per week in clinic, and performs over 800 procedures
(450 interventions and 350 diagnostic procedures) per year, and that he is "familiar with
the standards of care and regularly provide and supervise care in connection with the
treatment of patients situated like Nancy Everett Stovall in terms of physicians, physician's
assistants, nurses, and hospitals." As noted, Boone is a physician's assistant supervised (7)
by Dr. Hurd who, like Dr. Bush, is a cardiologist. Relators do not here contend Bush is
unqualified to render an expert opinion on the standard of care applicable to Dr. Hurd. 
Bush's expert report and curriculum vitae contain information from which the trial court
could have concluded that Dr. Bush is competent to testify to the standard of care of a
physician's assistant in the same practice area. See Manor Care Health Services, Inc. v.
Ragan, 2006 WL 57355, *4 (Tex.App.-Houston [14th Dist.] Jan. 12, 2006, no pet.); Hall v.
Huff, 957 S.W.2d 90, 100 (Tex.App.-Texarkana 1997, pet. denied) (both stating a
physician is not disqualified from offering an opinion regarding nursing care simply because
he is a physician and not a nurse by profession). 

 Boone and COL next question whether Bush is qualified to testify as to the standard
of care applicable to COL, a professional association. In response, real parties in interest
argue that no expert report was required as to COL because their initial pleadings asserted
COL's liability only on a respondeat superior theory. COL replies that real parties'
amended pleadings allege COL has liability apart from respondeat superior and the plain
language of 4590i requires an expert report for each health care provider against whom
a claim is asserted. Section 24 of the Professional Association Act provides: "The
association . . . shall be jointly and severally liable with the officer or employee furnishing
professional services for such professional errors, omissions, negligence, incompetence
or malfeasance on the part of such officer or employee when such officer or employee is
in the course of his employment for the association." TEX. REV. CIV. STAT. ANN. art. 1528f,
§ 24. There is no suggestion that Dr. Hurd or Boone was acting outside the course of
employment in their treatment of Stovall. If either of them was negligent, COL has the
liability prescribed by the Professional Association Act. Battaglia v. Alexander, 177 S.W.3d
893, 901-02 (Tex. 2005). We have concluded Dr. Bush is qualified to testify to the
standard of care applicable to Boone, and, as noted, relators do not here challenge his
qualifications to testify to that applicable to Dr. Hurd. Therefore, Dr. Bush is qualified to
testify as to the standard of care applicable to COL. Id., TEX. REV. CIV. STAT. ANN. art.
1528f, § 24. 

 COL seems to suggest that regardless of whether Dr. Bush was qualified to testify
as to COL's vicarious liability, Dr. Bush is not qualified to testify as to COL's individual
liability and, thus, the Bush report is inadequate. We do not reach that issue because we
have concluded section 24 of the Professional Association Act imputes the alleged liability
of Dr. Hurd and Boone to COL and, therefore, dismissal of the case against COL is not
warranted based upon the qualifications of Dr. Bush. 

Standard of Care


 We turn to the question whether the Bush report adequately states the standard of
care applicable to Boone and COL. We conclude that it does. 

 Bush's report divides his discussion of the standard of care into two sections: the
first addressing the cardiologist Dr. Hurd, his physician's assistant Stacey K. Boone, their
practice group COL, the surgeons Dr. Thames and Dr. Pessa, and their practice group
CMG (denominated by Dr. Bush as the "physicians") and the second addressing the
hospital and its employees. The "physicians" section of the report begins: "The standard
of care for Howard P. Hurd, II, M.D., Cardiologists of Lubbock, P.A., Stacey K. Boone, P.A.,
Elbert A. Thames, Jr., M.D., Mark E. Pessa, M.D., and Covenant Medical Group, P.A.
(hereinafter "the Physicians") for pre-operative, operative, and post-operative anti-coagulation and anti-coagulation transition is well established." (emphasis in original). 
There follows a detailed discussion of the standard of care with respect to post-operative
anti-coagulation therapy in patients with a mechanical valve prosthesis, as applicable to
Stovall. 

 Relators contend the report does not identify a standard of care for a physician's
assistant like Boone. They are correct that the report does not separately set forth a
standard of care applicable to Boone. But we must agree with the real parties in interest 
that the report nonetheless states Dr. Bush's opinion concerning the standard of care
applicable to Boone. The report ascribes the same standard of care to Boone as to the
others included among the "physicians." 

 Relators elsewhere cite Taylor v. Christus Spohn Health System Corp., 169 S.W.3d
241 (Tex.App.-Corpus Christi 2004, no pet.), which affirmed a trial court's dismissal of the
plaintiff's claims against six defendants based on the inadequacy of the expert report. The
proffered expert report ascribed negligent conduct to some, and sometimes all six,
defendants, without explaining the standard of care required of the individual defendants. 
We do not find Taylor controlling here. The disparate defendants there included an
emergency room physician, a hospital, and a cardiology association which, the court noted,
"owed different duties to the deceased." Id. at 246. 

 All the individual defendants here were involved in the administration of Stovall's
post-operative anti-coagulation therapy. Bush's report states that the standard of care
applicable to all of them required, inter alia, (8) that they "recognize ongoing blood loss and
discontinue anti-coagulation in the presence of ongoing blood loss. Specifically, the
patient's labs revealed ongoing blood loss and a growing wound hematoma was
recognized. The standard of care required that the anti-coagulation be discontinued in light
of the patient's presentation." While relators may disagree with Bush's opinions
concerning the standard of care applicable to each of those individual defendants, the
report contains a fair summary of his opinions and adequately informs them of the specific
conduct called into question. Palacios, 46 S.W.3d at 879-80. We conclude the report fairly
summarizes the standard of care applicable to Boone and COL. Id.; TEX. REV. CIV. STAT.
ANN. art. 4590i, §13.01. 

Breach of the Standard of Care and Causation


 Boone and COL argue the Bush report fails to show their breach of the standard of
care and fails to show a causal link between the care rendered by them and Stovall's
injuries. With regard to causation, the expert's report must contain information linking the
harm to the alleged breach in a manner that is not merely conclusory. Bowie, 79 S.W.2d
at 53. The report states, in part:

 With regard to the manner in which the are [sic] rendered by the Physicians
failed to meet the standards, the initial decision to anti-coagulate the patient, the
dose of anti-coagulation that was used (Heparin and Coumadin), the decision to
keep the patient in the hospital beyond the initial 24 hours of observation, and the
failure to recognize and act appropriately on the falling hemoglobin in a post-operative patient with an expanding hematoma on anti-coagulation all represent
breaches of the standard of care. Further, the failure on the part of the Physicians
to insist that the anti-coagulation be discontinued after 24 hours with the wound
hematoma beginning and the hemoglobin falling represent additional breaches of
the standard of care. (9)


 Here again, in this case, the report adequately informs Boone and the other
defendants of the specific conduct the plaintiffs call into question. That the report includes
Boone and COL with her supervising physician Dr. Hurd and the other physicians does not
render its discussion of the alleged breaches inadequate. We find also that the Bush
report links the harm to the breach (10) in a manner that is not merely conclusory. Bowie, 79
S.W.2d at 53. We conclude the Bush report constitutes a good faith effort to inform Boone
and COL of the specific conduct called into question and provides a basis for the trial court
to conclude that the claims against Boone and COL have merit. Palacios, 46 S.W.3d at
879.


Covenant Medical Group


 CMG also raises the broad issue of whether mandamus should issue to correct
respondent's order denying relief to CMG on its article 4590i, § 13.01 motion. Specifically,
CMG argues the Bush report (1) does not adequately establish a basis upon which Dr.
Bush is qualified to address the standards of care applicable to CMG's related surgeons
and does not adequately address the standard of care applicable to a professional group,
(2) does not adequately identify how its duty was breached, and (3) does not adequately
demonstrate how the allegedly negligent medical care of CMG caused injury or damage.

Qualifications


 With respect to Bush's qualifications, CMG argues the report and attached
curriculum vitae may establish that Bush is a well-qualified cardiologist but "contains no
explanation as to how he is qualified to render opinions regarding the standard of care
applicable to a general surgeon." (11) In a review of the qualifications of one rendering a
section 13.01 report, the "issue is the specific subject matter and the expert's familiarity
with it." Hagedorn v. Tisdale, 73 S.W.3d 341, 350 (Tex.App.-Amarillo 2002, no pet.) (citing
Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996)). Bush's report does not concern
Stovall's hernia surgery. The specific subject matter of the report is the management of
Stovall's post-operative anti-coagulation therapy and related care, particularly as it relates
to her history of aortic valve replacement. Bush's active medical practice encompasses
that subject matter. His report says he is familiar with the standard of care for physicians
"in relation to appropriate protocols for anti-coagulation and anti-coagulation transition" and
the statement is supported by the description of his practice, training and experience. 
(emphasis in original). We conclude he is qualified to testify to the standard of care
applicable to the physicians, including the surgeons with respect to their participation in the
management of that post-operative therapy and care. See Windisch, 138 S.W.3d at 512
(some standards of care applicable to multiple schools of practice); Blan v. Ali, 7 S.W.3d
741 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (practical knowledge of what is usually
and customarily done by other practitioners under similar circumstances may qualify
witness to testify).

 As with COL, our conclusion Bush is qualified to testify to the standard of care
applicable to Dr. Thames and Dr. Pessa in this context, mandates the conclusion the trial
court's denial of the motion to dismiss was not an abuse of discretion. TEX. REV. CIV.
STAT. ANN. art. 1528f, § 24; Battaglia, 177 S.W.3d at 901-02.

Standard of Care - Breach - Causation


 CMG contends Bush's report "says nothing about the standard of care applicable
to CMG. It simply lumps CMG in with other Defendant physicians, physician assistants and
professional entities.... [and] the Bush Report makes no effort to identify any particular duty
of care owed by CMG to this particular patient, how its duty, if any, was breached, and how
the alleged breach caused the decedent's injury." CMG also relies on Taylor, 169 S.W.3d
241 and cases cited therein. We disagree with CMG's contention. Just as with Boone and
COL, we find the report adequately addresses the standards applicable to the CMG
physicians who treated Stovall post-operatively, the manner in which Bush believes the
care fell below the standards and the resulting harm, and find that, in these circumstances,
the inclusion of the surgeons and the cardiology defendants in the same discussion of
those subjects did not render the report inadequate. (12) The trial court could have found the
report constitutes a good faith effort to inform CMG of the specific conduct called into
question and provides a basis for the trial court to conclude that the claims against CMG
have merit. Palacios, 46 S.W.3d at 879. 

Conclusion


 Because we conclude the trial court did not abuse its discretion in denying the
motions to dismiss of Boone, COL, and CMG, Walker, 827 S.W.2d at 839, we deny both
petitions for writ of mandamus.


 James T. Campbell

 Justice


 

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. This original proceeding has been assigned cause number 07-05-0384-CV.
3. The mandamus record indicates that CMG has been treated in the trial court as
a professional association. The record also shows that CMG recently filed amended
pleadings indicating that it actually is not a professional association but a non-profit
healthcare corporation. We have not considered, and this opinion does not address, the
effect of such a change in CMG's organizational form.
4. This separate proceeding has been assigned cause number 07-05-0425-CV. This
opinion considers and decides both cause number 07-05-0384-CV and cause number 07-05-0425-CV. 
5. Plaintiffs, in their original petition, also sued Covenant Health System, Covenant
Health System d/b/a Covenant Medical Center, Sisters of St. Joseph of Orange, St. Joseph
Health System, Elbert A. Thames, Jr., M.D., Mark E. Pessa, M.D., and SWAT Surgical
Associates, L.L.P. The petitions before us challenge the adequacy of the expert report
only as to Boone, COL, and CMG.
6. The record before us does not include the order dismissing Dr. Thames from the
lawsuit, but we note that the Fifth Amended Original Petition does not include Dr. Thames
as a party defendant.
7. TEX. OCC. CODE ANN. §§ 204.202, 204.204.
8. The report also discusses other requirements of the standard of care applicable
to the physicians, including a standard requiring the timely recognition of kidney failure and
a standard requiring performance of a serum creatinine (a measure of kidney function)
before administering I.V. contrast for an abdominal CT scan. 
9. The report alleges other breaches, including inappropriate dosages of medication
and failure to recognize kidney failure.
10. The report states, in part: "With regard to the causal relationship between the
Physicians' failure to meet the standard of care and the injury, harm, and damages
suffered . . . it is uncontroverted that this patient's death was due to internal bleeding and
related complications (hemorrhagic shock and multi-system organ failure). The internal
bleeding and related complications directly resulted from the inappropriate use of anti-coagulants in the immediate post-operative period and the inadequate monitoring and
adjustment of the continued anti-coagulation. The failure on the part of the Physicians to
recognize a significant drop in the hemoglobin during the post-operative period while the
patient was receiving anti-coagulation medications allowed the patient to continue to bleed
which caused the hemorrhagic shock, multi-organ system failure and death." 
11. We know Dr. Thames was the surgeon who performed the surgery for Ms.
Stovall's right inguinal hernia, however, we cannot determine Dr. Pessa's practice area
from the record before us.
12. The report further addressed a specific allegation against Dr. Thames, stating,
"Moreover, Dr. Thames ordered an I.V. rate of 50 cc/hour which represented a further
breach in the standard of care, because the I.V. rate was insufficient."



-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0155.cv%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0155.cv%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0155.cv%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0155.cv%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0155.cv%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00155-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



OCTOBER
15, 2010

 



 

VAN LEE BREWER, APPELLANT

 

v.

 

JASON SIMENTAL, ET AL, APPELLEES 



 



 

 FROM THE 278TH DISTRICT COURT OF WALKER
COUNTY;

 

NO. 23,325; HONORABLE KENNETH H. KEELING, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Van Lee Brewer (Brewer),
appeals the granting of a summary judgment in favor of Jason Simental, Gordon Townsend, David Duke, Janet C. Taylor,
Lindsey Lewis, Robert Losack, John D. Seigle, and Carl Davis (collectively, defendants), and
the denial of a no-evidence summary judgment filed by Brewer against the
defendants.[1]  We affirm.

Factual and Procedural Background

Brewer, an inmate within the Texas
Department of Criminal Justice - Institutional Division assigned, during all
applicable times, to the Wynne Unit in Huntsville, Texas, filed an action
pursuant to 42 U.S.C. § 1983,[2]
alleging a violation of his civil rights. 
Specifically, Brewer alleges that he had been the target of retaliatory
action by the defendants due to his attempting to exercise his rights of access
to the courts.  Brewers lawsuit was
filed in forma pauperis.  The defendants filed a motion to dismiss the
lawsuit pursuant to Chapter 14 of the Civil Practice and Remedies Code.  See Tex.
Civ. Prac. & Code Ann. ch. 14 (Vernon 2002). [3]  Ultimately, the trial court dismissed
Brewers cause of action because it found Brewer failed to comply with section
14.005 and Government Code section 501.008. 
See Tex. Govt Code Ann. § 501.008 (Vernon 2004).  Further, the trial court found the action to
be frivolous and malicious. See § 14.003(a)(2).


On appeal, the Waco Court of Appeals
reversed the trial courts decision and found that Brewer had, in fact, met the
administrative requirements of both Chapter 14 and section 501.008 of the
Government Code.  Further, the appellate
court found that Brewer asserts two distinct claims by his action: 1) retaliation
for his exercise of his constitutional right of access to the courts, and 2)
conspiracy to retaliate for attempting to exercise his constitutional right of access
to the courts.  See Brewer v. Simental, 268 S.W.3d 763, 770-71 (Tex.App.Waco
2008, no pet.).  After analyzing the
conspiracy to retaliate claim, the Waco Court found that the trial court was
correct in dismissing that claim.  See
id. at 774.  However, as to the
claim that Brewer had been retaliated against because he attempted to exercise
his constitutional right of access to the courts, the Waco Court concluded that
Brewer had alleged enough facts from which retaliation might plausibly be
inferred.  See id. at
773.  The Waco Court remanded the case to
the trial court for further consideration in light of its opinion.

Subsequent to the remand, the
defendants filed a traditional motion for summary judgment.  See Tex.
R. Civ. P. 166a(c).[4]  They alleged three grounds to support the
granting of a summary judgment.  First,
the defendants alleged that Brewer was not deprived of a constitutional right
and could not show a retaliatory adverse act. 
Therefore, posited the defendants, Brewers 1983 action was not
cognizable by the court.  Second, the
defendants alleged that they had not violated any of Brewers constitutional
rights and, therefore, the defendants were entitled to qualified immunity.  Finally, the defendants alleged that Brewer
had been afforded minimal due process procedures at his disciplinary
hearing.  Thus, his due process rights
were not violated in a manner contrary to 1983. 
Brewer responded to the motion for summary judgment,[5]
and filed a cross-motion for summary judgment that appears to be a traditional
motion for summary judgment.[6]  Before submitting his traditional motion for
summary judgment, Brewer filed a no-evidence motion for summary judgment,
pursuant to rule 166(a)(i), contending that there was
no evidence to support one or more of the essential elements of the defendants
affirmative defenses of sovereign immunity, official immunity, statute of
limitations, assumption of risk, estoppels, illegality, or contributory and
comparative negligence.  Of importance
for this opinion is Brewers declaration in his no-evidence motion for summary
judgment that the defendants affirmative defense of qualified immunity would
be addressed within his traditional motion for summary judgment.  Thus, the qualified immunity affirmative defense
was not a part of the no-evidence motion for summary judgment.  

The trial court granted a final
summary judgment stating that Brewer had not raised a material question of fact
that his constitutional rights were violated by any of the defendants.  Accordingly, the trial court found the
defendants were entitled to qualified immunity. 
The trial court, therefore, dismissed all of Brewers claims with
prejudice.  This appeal followed.

Brewer brings four issues before the
Court.  First, Brewer contends that the
trial court erred in granting the defendants qualified immunity because the
trial court misapplied the law regarding Brewers failure to raise a material
issue of fact regarding violation of his constitutional rights.  Second, Brewer contends that the trial court
erred in denying his cross-motion for summary judgment because the defendants
did not respond.  Third, Brewer contends
that the trial court erred in denying his no-evidence motion for summary
judgment when the defendants failed to produce the required summary judgment
evidence.  Finally, Brewer contends that
we should reconsider his conspiracy to retaliate cause of action.

Traditional Motions for Summary Judgment

Standard of Review  

Appellate courts review the granting of a motion for
summary judgment de novo.  See
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661
(Tex. 2005).  When, as here, both parties
file a motion for summary judgment with the trial court, and one is granted and
one is denied, the reviewing court determines all questions presented and
renders the judgment that should have been rendered by the trial court. HCBeck,
Ltd., v. Rice, 284 S.W.3d 349, 352 (Tex. 2007). The movant in a traditional motion for summary judgment, filed
pursuant to rule 166a(c), has the burden of showing that no genuine issue of
material fact exists and that it is entitled to a summary judgment as a matter
of law.  See Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  The trial court must indulge every reasonable
inference in favor of the non-movant and resolve all
doubts in his favor.  Id.

Qualified Immunity

            The
trial court granted the defendants traditional motion for summary judgment on
the ground that Brewer had not raised a material question of fact that his
constitutional rights were violated by the defendants and, therefore, the
defendants were entitled to qualified immunity. 
On appeal, Brewer asserts that his summary judgment proof demonstrates
the existence of a material fact issue about whether the conduct of the
defendants was in retaliation for Brewers attempt to exercise his
constitutional right of access to the courts.

            It
is axiomatic that [p]ublic officials acting within
the scope of their official duties are shielded from civil liability by the
qualified immunity doctrine.  Kipps
v. Caillier, 197 F.3d 765, 768 (5th
Cir. 1999).   Those governmental
officials are entitled to qualified immunity insofar as their conduct does not
violate clearly established statutory or constitutional rights of which a
reasonable person would have known.  Id.
(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  To demonstrate that defendants are not
entitled to claim qualified immunity, a plaintiff must satisfy a three-part
test set forth in Morris v. Dearborne, 181
F.3d 657, 665 (5th Cir. 1999). 
A court must determine, first, whether plaintiff alleges a deprivation
of a constitutional or statutory[7]
right; second, whether that right was clearly established at the time of the
alleged violation; and, finally, whether the record shows that a violation
occurred, or at least gives rise to a genuine issue of material fact as to
whether the defendant actually engaged in the conduct that violated the clearly
established right.  Id.
at 665-66.

            That
Brewer enjoys a constitutional right of access to the courts is beyond
doubt.  See Bounds v. Smith,
430 U.S. 817, 821, 97 S.Ct. 1491, 52
L.Ed.2d 72, (1977).  Further,
there is no question that Brewer may not be retaliated against because he
attempts to exercise his right of access to the courts by use of the law
library.  See McDonald v.
Steward, 132 F.3d 225, 231 (5th Cir.
1998).  

However, the defendants contend that
Brewer must demonstrate that his access to the courts was, in fact, hindered by
their actions.  To support this
proposition, the defendants refer this Court to the McDonald case cited
above.  The gist of the argument by the
defendants is that, unless Brewer demonstrates something more than de minimis
retaliatory actions by the defendants, there is no constitutional
violation.  This line of reasoning
concludes that if there is no constitutional violation, then there is no
cognizable 1983 action.  

Brewer counters this argument by
alleging that this matter has previously been decided by the Waco Court in the
earlier Brewer decision.  Therefore, we,
as a reviewing court, are bound by that decision.  We will address both sets of contentions as
set out above.

In order to establish a cause of
action for retaliation, Brewer must establish: 1) a specific constitutional
right, 2) the defendants intent to retaliate against Brewer for his exercise
of that right, 3) a retaliatory adverse act, and 4) causation.  See id.  The issue boils down to whether or not there
are material fact issues as to the third element, a retaliatory adverse
act.  In Lewis v. Casey, 518 U.S.
343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996),
Justice Scalia, writing for the Court, in an access to the courts case
involving the State of Arizona said, . . . the inmate therefore must go one
step further and demonstrate that the alleged shortcomings in the library or
legal assistance program hindered his efforts to pursue a legal claim.  The Supreme Court was addressing the issue of
whether actual injury was required to show a violation of the constitutional
requirement of access to the courts.  See
id.  The Court concluded that
actual injury was required by the prior case of Bounds v. Smith, 430
U.S.817, 821-25, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  See Lewis, 518 U.S. at
351.  In explaining the holding in Lewis,
Justice Scalia remarked, [a]lthough Bounds
itself made no mention of an actual-injury requirement, it can hardly be
thought to have eliminated that constitutional prerequisite.  Lewis, 518 U.S. at 351.  The 5th Circuit refers to this
requirement in its discussion of de minimis retaliatory actions, and has held that such an
act would not support a constitutional violation in the retaliation arena.  See Morris v. Powell, 449 F.3d
682, 685-86 (5th Cir. 2006, cert. denied) (retaliation for
exercising First Amendment right to use prison grievance procedure).  The question then becomes did the defendants
have summary judgment proof that reduced Brewers claim of retaliation to de minimis status.  Our reading of the record is that the only
summary judgment evidence on the point did, in fact, show that Brewers claim
was of the de minimis
variety.

Specifically, the defendants produced
the records of the law library as part of the summary judgment evidence.  These records affirmatively show that, during
the month of September 2005, Brewer was afforded a total of 49.5 hours in the
law library.  The records further reflect
that, during October 2005, Brewer was able to visit the law library for a total
of 40.5 hours.  It must be remembered
that, according to Brewers allegations, the retaliatory acts occurred in
September and October 2005.  The summary
judgment evidence also clearly demonstrates that the only active piece of
litigation that Brewer was able to claim to be working on was a petition for
review in Cause No. 05-0679, styled Van Lee Brewer v. Texas Dept. of Pub. Safety.  Brewer has admitted that the petition for
review was due on October 14, 2005, and the records of the Texas Supreme Court,
produced as part of the summary judgment evidence, reflect that the petition
was filed on October 17, 2005.  Nothing
in the summary judgment proof offered by Brewer indicates that there were any
further requirements for filing with the Texas Supreme Court.  Further, nothing in the record establishes
nor does Brewer contend that the Texas Supreme Court refused to consider Brewers
petition as untimely filed.  

In a factual scenario similar to the
one presented in the present case, the 5th Circuit held, in Jones
v. Greninger, 188 F.3d 322, 326 (5th
Cir. 1999), that restricting an inmates law library access to five hours per
week did not violate the inmates right of access to the courts.  The Texas Supreme Court held, in a case
involving allegations of retaliation for exercising a First Amendment right to
complain about treatment by prison officials, that acts of de minimis retaliation do not satisfy the
retaliatory adverse act requirement of a retaliation claim.  See Institutional Div. of the Tex.
Dept Crim. Justice v. Powell, 2010 Tex. LEXIS 480, at *6; 53 Tex. Sup. J.
953 (July 2, 2010).  

Brewer counters this argument by
arguing that this issue was determined by the Waco Courts decision in the
first Brewer case.  See Brewer,
268 S.W.3d at 770-71. 
However, Brewers reliance on the previous decision by the Waco Court is
misplaced for two reasons.  First, the
Waco case was decided under the provisions of Chapter 14 and the courts
attention was directed at the pleadings of Brewer to see if he alleged a cause
of action that could withstand a challenge that it was frivolous.  Therefore, the Waco Court was required to
accept the factual allegations of Brewer as true.  Id. at 770.  Second, Brewer has fixated his argument on
that portion of the opinion that states, [t]he inmate must allege a
chronology of event from which retaliation may plausibly be inferred.  Id. at 771 (quoting Woods v Smith,
60 F.3d 1161, 1166 (5th Cir. 1995)). 
However, this quoted portion of the opinion dealt with the second
element of a retaliation claim, the defendants intent to retaliate.  Id. 
All that the opinion says regarding the retaliatory adverse act is a
short recitation of facts as alleged by Brewers pleadings with a conclusory statement that, Brewers petition adequately
pleads retaliatory adverse acts.  Id. at 773. 
While the first Brewer opinion may be instructive in several aspects, it
is not the law of the case as to the issue of summary judgment, for that was
not the issue with which it dealt.  Accordingly,
we do not find the opinion conclusive on the issues presented to this
Court.  See Briscoe v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003)
(questions of law decided on appeal to the court of last resort will control
throughout the case).  

Based upon our review of the summary
judgment evidence and application of the law regarding de minimis retaliation, we find that the
trial court was correct when it granted the summary judgment in favor of the
defendants.  There was no violation of
Brewers constitutional rights.  See
Lewis, 518 U.S. at 351. 
Therefore, the defendants were entitled to claim qualified
immunity.  See  Kipps,
197 F.3d at 768.  

In reviewing Brewers traditional
motion for summary judgment, we first recognize that Brewer is representing
himself pro se and is not schooled in
the law.  However, his main thesis for
our overruling the denial of his motion is centered around
his perception of the requirements of Federal Rule of Civil Procedure 56.  See Fed.
R. Civ. P. 56.  To the extent
Brewer is asking us to apply the Federal Rules of Procedure, we decline to do
so.  Summary judgment practice in Texas
Courts is governed by rule 166(a) and not the Federal Rules.  Further, because the defendants have shown
that they were entitled to qualified immunity, Brewers traditional motion for
summary judgment based upon the defendants alleged failure to respond must
fail.  Accordingly, we overrule Brewers
second issue.

Having overruled Brewers first and
second issues, we must now turn our attention to his no-evidence motion for
summary judgment, and his request that we reconsider the Waco Courts ruling
that his conspiracy claim lacked any arguable basis in the law.  We will address the no-evidence motion first.

Brewers
No-Evidence Motion for Summary Judgment

Brewers next issue contends that the
trial court abused its discretion by not granting his no-evidence motion for
summary judgment.  The summary judgment
in question addressed the affirmative defenses that the defendants pled, except
for qualified immunity.  Since the trial
court did not grant a summary judgment based upon any of the affirmative
defenses Brewer referenced in the motion, the failure to grant a summary
judgment could not have been error.  The
above consideration aside, when we review the entire record, as we must, there
is more than a scintilla of evidence to support the defendants affirmative
defenses.  At the end of the day, we need
not reach this issue for it does not alter the disposition of the case.

 

Conspiracy to Retaliate Cause of
Action

In his final issue, Brewer asserts
that this Court has the authority to reconsider our sister courts ruling that
Brewers conspiracy to retaliate claim had no arguable basis in law and was,
therefore, frivolous.  Brewer, 268 S.W.3d at 774. 
While Brewer may be correct in his statement that we have the discretion
to revisit the conclusion of the Waco Court,[8]
we see no reason to do so.  Brewer has
yet to provide the Court with any authority demonstrating that the Waco Court
was in error.  Further, Brewer did not
seek review of the prior holding by the Texas Supreme Court.  Accordingly, we decline the invitation to
revisit the issue and overrule his fourth issue.

Conclusion

Having overruled all of Brewers
issues that required a ruling, we affirm the judgment of the trial court.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 











[1] Pursuant to the Texas Supreme Courts docket
equalization efforts, this case was transferred to
this Court from the 10th District Court of Appeals.  See Tex.
Govt Code
Ann. § 73.001 (Vernon 2005).  That being so, we must decide this case in
accordance with the precedent of the transferor court under the principles of stare
decisis if our decision otherwise would have been
inconsistent with the precedent of the transferor court.  Tex.
R. App. P. 41.3; Phillips v. Phillips, 296 S.W.3d 656, 672 (Tex.App.El Paso 2009, pet. denied)

.





[2] Further reference to 42 U.S.C. § 1983 will be by
reference to 1983.

 





[3] Further reference to the Texas Civil Practice &
Remedies Code will be by reference to section or § ___, or Chapter ____. 





[4] Further reference to the Texas Rules of Civil Procedure
will be by reference to rule ___.

 





[5] Brewers response was actually filed prior to the
defendants filling their motion for summary judgment.  However, no one has objected to the response
on the grounds that it was not timely made and we will consider the response in
our opinion.





[6] The motion actually references Federal Rule of Civil
Procedure 56(c).  However, the trial
court and the defendants treated Brewers motion as a no-evidence motion for
summary judgment and we will do likewise.





[7] While Morris does not expressly provide for
claims based upon violations of statutory rights, the facts of Morris
were addressing claimed violations of only constitutional rights.  Id. 
However, from Harlow, we are instructed that a claim for
violation of statutory rights is cognizable in a 1983 action.  See Harlow, 457 U.S. at 818.





[8] But see Tex.
R. App. P. 41.3; Phillips, 296 S.W.3d at 672 (under the
principle of stare decisis,
a transferee court must apply the precedent of the transferor court).